IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH P. HUGHES, SR. as assignee of<br>JARRETT PRATT | :<br>:<br>: |
| v. | :    Civil No. CCB-12-1555 |
| | :<br>: |
| PROGRESSIVE DIRECT<br>INSURANCE COMPANY, INC. | :<br>:<br>:<br>: |

## MEMORANDUM

The plaintiff in this case, Joseph P. Hughes, Sr. ("Hughes"), brought this action against defendant Progressive Direct Insurance Company ("Progressive") as assignee of Jarrett Pratt ("Pratt"). Hughes alleges that Progressive acted in bad faith in handling an insurance claim pending against Pratt. Now pending before the court is Progressive's motion to dismiss. (ECF No. 15.) For the reasons stated below, Progressive's motion will be granted.

## BACKGROUND

On July 10, 2006, Jarrett Pratt broadsided a vehicle driven by Joseph P. Hughes, Sr. in Baltimore City, Maryland. Hughes's vehicle rolled over and he was severely injured in the accident. (ECF No. 9, Am. Compl., ¶ 4.) On or about January 23, 2009, Hughes filed suit in the Circuit Court for Baltimore City against Pratt for his injuries and against his insurer, GEICO Insurance ("GEICO"), for uninsured motorist coverage benefits. (*Id.* at ¶ 6.) Pratt was insured by Progressive, a Wisconsin corporation with its principal place of business in Ohio. (*Id.* at ¶ 3.) Pratt's insurance policy with Progressive provided coverage up to $100,000 per accident. (*Id.*)

At some point while the lawsuit was pending, but before it proceeded to trial, Progressive offered its $100,000 policy to Hughes.[1] (*Id.* at ¶ 15.) GEICO was placed on notice of the offer. (*Id.*) According to Hughes, GEICO did not respond in writing within 60 days after receipt of notice in accordance with Maryland law. *See* MD Code Ann., Ins., § 19-511. (*Id.* at ¶17.) As a consequence, Hughes sought to enforce settlement via a Motion to Enforce Settlement. (*Id.*) In response to Hughes's motion, GEICO claimed that an email its counsel sent to Hughes qualified as notice under Section 19-511.  Hughes, on the other hand, alleged that the email did not constitute notice under the statute. (*Id.*) Progressive did not join Hughes's Motion to Enforce Settlement against GEICO. (*Id.* at ¶ 19a.) The court ultimately denied the motion, finding that an email amounted to proper notice as a matter of law under Section 19-511. (*Id.* at ¶ 19b.)

In March 2010, Hughes's lawsuit proceeded to trial in Baltimore City Circuit Court. (*Id.* at ¶ 10.) The jury returned a verdict of $725,000.93, which was reduced upon consent motion to $720,000.03 to conform to the statutory cap on pain and suffering. (*Id.*) GEICO paid $500,000 of the verdict, thereby satisfying the contract claim against it. (*Id.* at ¶11). The $220,000.93 judgment against Pratt remains unsatisfied and has been collecting interest since May 5, 2010 (*Id.* at ¶ 12).

On or about April 11, 2012, Hughes, as Pratt's assignee, filed a complaint for "bad faith" against Progressive in Baltimore City Circuit Court (ECF No. 1, ¶ 1.) The case was removed to this court on May 24, 2012. (*Id.*) Hughes alleges that Progressive failed to use good faith in handling the claim pending against Pratt by, among other things, failing to: 1) join in Hughes's Motion to Enforce Settlement against GEICO; 2) appeal the court's ruling denying the motion; 3) attend a court-ordered mediation prior to trial; 4) pressure or encourage GEICO to resolve the

---

[1] Hughes alleges that "[i]t is believed that Pratt's attorney advised Progressive the case was worth policy limits in July 2009," but that Progressive did not offer its $100,000 policy to Hughes "until 2010."  (ECF No. 9, ¶ 14-15).

claim within its policy limit; 5) report to Pratt regarding the consequences of the failure to settle within GEICO's policy limit prior to the verdict; 6) depose any of Hughes's treating physicians; 7) set up an independent medical exam with a physician other than one who only performs insurance company medical exams; 8) file any post-trial motions requesting remitter [sic] or a new trial, or file an appeal; 9) negotiate with Hughes to satisfy the excess judgment against Pratt at a reduced amount; 10) communicate the status and seriousness of the lawsuit to Pratt during the pendency of the lawsuit; and 11) obtain Pratt's consent to concede liability. (ECF No. 9, ¶ 19a-k.) Hughes also alleges that Progressive and GEICO conspired to keep Pratt as a party in an attempt to mitigate the amount of the verdict. (*Id.* at ¶ 19l.)

Progressive filed a motion to dismiss, alleging that Hughes's complaint fails to state a claim under which relief can be granted because Progressive offered its policy limits in settlement prior to trial. According to Progressive, although Hughes's allegations may set forth a malpractice claim against legal counsel selected by Progressive, they do not constitute the basis for a claim of "bad faith" failure to settle.[2]

## ANALYSIS

***Motion to Dismiss Standard***

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the

---

[2] Progressive's initial motion to dismiss, now moot, was directed at the initial complaint. The pending motion to dismiss is directed at the amended complaint.

light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted).  Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

*Discussion*

In Maryland, a third-party insurer may be liable for "bad faith" in the insurer's dealings with its insured when the insurer refuses an opportunity to settle a claim against the insured within policy limits. *State Farm Mut. Auto Ins. Co. v. White*, 248 Md. 324, 330-331, 333, 236 A.2d 269 (1967); *Sweeten v. Nat'l Mut. Ins. Co.*, 233 Md. 52, 54-55, 194 A.2d 817 (1963)).

The Maryland Court of Appeals first recognized a tort action based upon a liability insurer's wrongful failure to settle a claim against its insured within policy limits in *Sweeten v. Nat'l Mut. Ins. Co.*, 233 Md. at 54-55.  The court held that the plaintiff had set forth a cause of action in tort in light of the insurer's "exclusive control . . . of investigation, settlement and

defense of any claim or suit against the insured" and the existence of "a potential, if not actual, conflict of interest giving rise to a fiduciary duty." *Id.* at 55.

In *White*, the court held that an insurer faced with an opportunity to settle a claim within the limits of an insured's liability policy owed the insured a duty of good faith. 248 Md. at 332-33. The court set forth several factors for determining whether a bad faith failure to settle exists:

> In applying the 'good faith' theory the courts have found that the presence of one or more of the following acts or circumstances may affect the 'good faith' posture of the insurer: the severity of the plaintiff's injuries giving rise to the likelihood of a verdict greatly in excess of the policy limits; lack of proper and adequate investigation of the circumstances surrounding the accident; lack of skillful evaluation of plaintiff's disability; failure of the insurer to inform the insured of a compromise offer within or near the policy limits; pressure by the insurer on the insured to make a contribution towards a compromise settlement within the policy limits, as an inducement to settlement by the insurer; and actions which demonstrate a greater concern for the insurer's monetary interests than the financial risk attendant to the insured's predicament.

*Id.* at 332.

No Maryland case has been cited to this court in which the Court of Appeals held that an insurer that offered its policy limits in settlement of a claim prior to trial could be held liable in tort for bad faith.  In *Caruso v. Republic Ins. Co.*, 558 F. Supp. 430, 432 (D. Md. 1983), *abrogated on other grounds by Yuen v. Am. Republic Ins. Co.*, 786 F. Supp. 531 (D. Md. 1992), a judge in this District observed that "[i]n Maryland a cause of action for breach of fair dealing and good faith has been limited to claims by the insured against its insurer for failure to settle third-party liability claims for amounts within the policy limits" (internal citations omitted). It does not appear that any case decided since *Caruso* has held otherwise. *See, e.g.*, *Mesmer v. Maryland Auto Ins. Fund*, 353 Md. 241, 262-63, 725 A.2d 1053 (1999) (holding that a tort action based on bad faith failure to settle a liability claim within policy limits can only arise when the insurer undertakes to provide a defense to the insured); *Allstate Ins. Co. v. Campbell*, 334 Md. 381, 396-97, 639 A.2d 652, 658 (1994) (declining to extend a cause of action for bad faith failure

of the insurer to settle a claim within policy limits to a failure to settle initially that is followed by a settlement by the insurer and full release of the insured).

      Turning to the instant case, it is undisputed that Progressive offered its policy limits in settlement of the underlying action prior to trial. Hughes alleges that Progressive's failure to make the offer until 2010 constitutes "unreasonable delay." (ECF No. 9, Am. Compl., ¶ 15.) While this may be true, because Progressive ultimately *did* offer its policy limits before trial, and considering all the facts alleged in the amended complaint, the court finds that Hughes has not stated a claim for "bad faith" failure to settle as a matter of law. *See Sobus v. Lumbermens Mut. Cas. Co.*, 393 F. Supp. 661, 673 (D. Md. 1975), *aff'd sub nom. Sobus v. Lumbermen's Mut. Cas. Co.*, 532 F.2d 751 (4th Cir. 1976) (finding no basis for liability even where the insurer offered its policy limits in settlement on the day of trial). Accordingly, the case will be dismissed with prejudice.

      A separate Order follows.

September 27, 2012                                                        _____/s/_____
Date                                                                              Catherine C. Blake
                                                                                United States District Judge